# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

JOHN DAVID BATTAGLIA , §
§
          Petitioner, §
§
v. §
§        NO. 3:16-CV-1687-B
LORIE DAVIS, Director §
Texas Department of Criminal Justice, §      (Death Penalty Case)
Correctional Institutions Division, §
§
          Respondent. §

## MEMORANDUM OPINION AND ORDER
## <u>DENYING FUNDING AND A STAY OF EXECUTION</u>

On January 2, 2018, petitioner John David Battaglia ("Battaglia") filed a motion for funding of investigatory services, ("Mot. Inv.") doc. 9, and a motion for stay of execution, ("Mot. Stay") doc. 10. The certificates of conference on both of these motions indicate that they are opposed. In response to this Court's order, Battaglia filed a supplemental brief, ("Supp. Br.") doc. 12, Respondent filed a response, ("Resp.") doc. 13, and Battaglia has filed a reply, ("Reply") doc. 14. Because Battaglia has not shown an entitlement to funding or a stay of his execution, relief is **DENIED**.

## I.

Petitioner was convicted of capital murder and sentenced to death in Dallas County for the murder of his two young daughters while his former wife and mother of the children listened helplessly on the phone. *See Battaglia v. State,* No. AP-74,348, 2005 WL 1208949, at *1 (Tex. Crim. App. May 18, 2005). His conviction and sentence were affirmed on direct appeal. *Id.* Petitioner filed an application for a post-conviction writ of habeas corpus, which was denied by the Texas Court of Criminal Appeals ("CCA"). *See Ex parte Battaglia,* No. WR-71,939-01, 2009 WL 3042925 (Tex.

Crim. App. Sep. 23, 2009). Petitioner then filed a petition for writ of habeas corpus with supporting brief in this court, which was denied. *See Battaglia v. Stephens,* No. 3:09-CV-1904-B, 2013 WL 5570216 (N.D. Tex. Oct. 9, 2013), *COA denied, Battaglia v. Stephens,* 621 F. App'x 781 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 803 (2016).

The state court set Battaglia's execution for March 30, 2016. *See State v. Battaglia,* No. F01-52159-H (Crim. Dist. Ct. No. 1, Dallas Co., Tex., Dec. 16, 2015). Battaglia filed a motion to appoint new counsel in state court, which was denied. *See State v. Battaglia,* No. F01-52159-H (Crim. Dist. Ct. No. 1, Dallas Co., Tex., Mar. 2, 2016). Battaglia then filed in this Court a motion to appoint new counsel and motion to stay his execution, which were denied. *See Battaglia v. Stephens,* No. 3:16-cv-00687-B (N.D. Tex., Mar. 18, 2016). The United States Court of Appeals for the Fifth Circuit reversed and granted a stay of execution so that newly appointed counsel (Gregory Gardner) could investigate and file a challenge in the state court to Battaglia's competency to be executed. *See Battaglia v. Stephens,* 824 F.3d 470 (5th Cir. Mar. 30 2016).

On June 10, 2016, Battaglia filed in this Court a motion to appoint co-counsel Michael Mowla. *See Battaglia v. Davis,* No. 3:16-CV-00687-B, doc. 15 (N.D. Tex.). This motion was granted on June13. *See id.,* No. 3:16-CV-00687-B, doc. 16.

On June 21, Battaglia filed an *ex parte* motion in this Court for leave to proceed *ex parte* to request investigative and expert funding. *See id.,* No. 3:16-CV-00687-B, doc. 17, refiled in *Battaglia v. Davis,* No. 3:16-CV-1687-B, doc. 2 (N.D. Tex.). Although the certificate of service indicated that the motion was served on Respondent's counsel "using the electronic case filing system," doc. 2, 4, Battaglia's counsel filed the motion sealed and *ex parte,* so that it was not actually served on Respondent. Simultaneously with the filing of the motion for leave, Battaglia filed in this court his

*ex parte* motion for funding of $19,500 to obtain expert assistance from Diane M. Mosnik, Ph.D., and $15,000 for investigative assistance from Nicole Van Toorn, a mitigation specialist, doc. 2-2. On June 22, this Court issued a memorandum opinion and order on the motion denying leave to proceed *ex parte* because it had not actually been served on Respondent, but included guidance on the procedures required to proceed *ex parte* and on what would be required to make the showing that funding for the sought services was reasonably necessary to the representation of Battaglia before the state court. *See* Order, doc. 3. This order was originally made *ex parte*, but has been opened to both parties following the filing of the instant motions. Although this order assured Battaglia that "this Court would grant funding that is shown to be reasonably necessary to 'file an Article 46.05 petition' in the state court," Battaglia made no further requests for funding in this Court until the instant motions were filed on January 2, 2018. Order, doc. 3, 3.

On July 21, 2016, Battaglia filed a motion in the state district court for leave to proceed *ex parte* on funding requests. *See* Mot. Inv., App.001-007. In this motion, Battaglia asserted that if the state court chose not to fully fund the litigation so that he may hire the necessary experts, Battaglia would seek a stay of the state court proceedings to return to federal court to secure the funding. *See* Mot. Inv., App.006-007. This motion was accompanied by an *ex parte* motion for funding to obtain the services of the same neuropsychologist and mitigation investigator he mentioned in his motion before this Court. *See* Mot. Inv., App.008-023. In the *ex parte* motion, Battaglia argued that, because of the mitigation investigator's lower hourly rate, appointing the investigator would "be more cost effective to accomplish this necessary work than if counsel undertakes it." *See* Mot. Inv., App.011. The motion also asserted that the additional expert and investigative assistance was needed even though trial counsel had previously obtained expert assistance and developed

information concerning Mr. Battaglia's mental health. *See* Mot. Inv., App.011-012.

On July 29, 2016, the state district court granted $12,000 for expert assistance of Dr. Mosnik, but denied the motion for funding the mitigation investigator. *See* Mot. Inv., App.024. Despite the assertion otherwise, *see* Reply, 8, no further motions for funding were filed in this Court until after the state court proceedings concluded and the current motion was filed on January 2, 2018.

The state court again set Battaglia's execution, this time for December 7, 2016. *See State v. Battaglia,* F01-52159-H (Crim. Dist. Ct. No. 1, Dallas Co., Tex., Aug. 12, 2016). Battaglia's counsel investigated his competency to be executed, utilizing the expert assistance obtained to evaluate Battaglia, and challenging his competence to be executed in state court under Article 46.05 of the Texas Code of Criminal Procedure. *See* Mot. Inv., App.166. The state court conducted an evidentiary hearing on the claims and ruled that Battaglia had not shown that he was incompetent to be executed. *See State v. Battaglia,* F01-52159-H (Crim. Dist. Ct. No. 1, Dallas Co., Tex., Nov. 18, 2016), Mot. Inv., App.164-177. The CCA affirmed the determination and denied relief. *See Battaglia v. State,* No. AP-77,069, ___ S.W.3d ____, 2017 WL 4168595 (Tex. Crim. App. Sept. 20, 2017).

Subsequently, the state district court again set his execution, this time for February 1, 2018. *See State v. Battaglia,* No. F01-52159-H (Crim. Dist. Ct. No. 1, Dallas Co., Tex., Oct. 30, 2017). Battaglia waited until January 2, 2018, less than a month before the scheduled execution, to file his current motion in this Court to fund investigative assistance, Mot. Inv., doc. 9. At the same time, Battaglia also filed a motion for a stay of his execution to allow his sought investigator additional time, Mot. Stay, doc. 10.

## II.

In his motion for funding, Battaglia requests "that the Court authorize his counsel to retain investigative services for further investigation of his *Ford/Panetti* claim as required under 18 U.S.C. § 3599 (2017)," and "that the Court allow $15,000 for **the mitigation investigation that should have been allowed by the state court**." Motion, doc. 9, 7 (emphasis added). Battaglia states,

> In the proceedings in the state court, Battaglia explained that investigative assistance was reasonably necessary to representation on his execution competency in order to: (1) obtain and review voluminous records from TDCJ and Battaglia's medical records, which to counsel's knowledge had not been collected or reviewed by previous counsel; (2) collect information about Battaglia's background, including environmental and genetic risk-factors by interviewing collateral sources; and (3) collect information about his present rational understanding of his death sentence by interviewing collateral sources, including Battaglia's family members and others with whom Battaglia communicates.

Mot. Inv., 25. Battaglia argues that a mitigation specialist who could obtain and evaluate this information would have put the evidence from sources other than the experts into perspective. This is important, Battaglia argues, because the state court's finding that Battaglia was malingering was not supported by the record as asserted by the state court, which apparently relied upon non-expert testimony in makings this determination. Therefore, a mitigation specialist who could have obtained additional non-expert information could have produced additional evidence to show that Battaglia was not malingering. *See* Mot. Inv., 28-30.

## III.

Federal law allows a state death row inmate to apply for funds for investigative assistance:

> (f) Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).

18 U.S.C. § 3599(f).  This Court cannot alone authorize funding in excess of $7,500, but, when the additional showing is made, may recommend to the chief judge of the circuit or his designee that the excess funding is "necessary to provide fair compensation for services of an unusual character or duration" when that additional showing is made under 18 U.S.C. § 3599(g)(2).  "The denial of funding will be upheld when it would only support a meritless claim, when it would only supplement prior evidence, or when the constitutional claim is procedurally barred." *Ward v. Stephens,* 777 F.3d 250, 266 (5th Cir. 2015) (quoting *Woodward v. Epps,* 580 F.3d 318, 334 (5th Cir. 2009)) (footnote omitted); *see also Green v. Davis,* No. 3:15-CV-02197-M, 2016 WL 3824415, at *2-*4 (N.D. Tex. July 12, 2016) (denying funding to further develop exhausted claim); *Mamou v. Stephens,* No. CIV. H-14-403, 2014 WL 4274088, at *2 (S.D. Tex. Aug. 28, 2014) (denying investigative funding because "*Pinholster* prohibits a federal court from using evidence that is introduced for the first time" in federal court (quoting *Blue v. Thaler,* 665 F.3d 647, 661 (5th Cir. 2011)).

The availability of funding is limited by the scope of this Court's review under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the AEDPA, if the state court denies the claim on the merits, a federal court may not grant relief unless it first determines that the state court unreasonably adjudicated the claim, as defined in 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision does not authorize habeas relief, but restricts this Court's power to grant relief to state prisoners by barring the relitigation of claims in federal court that were not unreasonably denied by the state courts. The AEDPA limits, rather than expands, the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter,* 562 U.S. 86, 98 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court, unless the record before the state court satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Because the AEDPA limits evidence that may be considered in making this threshold showing, it indirectly limits the availability of funds for investigative assistance. *See Ward v. Stephens,* No. 3:10-CV-2101-N, 2014 WL 887440, at *11 n.10 (N.D. Tex. Mar. 6, 2014) (finding that it properly denied funding to investigate an exhausted claim because the petitioner "must therefore overcome the limitations in § 2254(d) on the record that was before the state court"); *Mamou,* No. CIV. H-14-403, 2014 WL 4274088, at *4 (finding requested funding for additional factual development not reasonably necessary because "*Pinholster* prevents federal courts from considering facts outside the state-court record."); *Brown v. Thaler,* No. CV H-09-74, 2011 WL 13115485, at *1 (S.D. Tex. May 23, 2011) (finding that petitioner did not show expert assistance reasonably necessary to grant funding, especially since the record under federal habeas review is limited to the record before the state court.); *Devoe v. Davis,* No. 16-70026, ___ Fed. App'x ____, 2018 WL 341755, *9 (5th Cir. Jan. 9, 2018).

In *Devoe v. Davis,* the inmate sought funding under § 3599 for an investigator to review the state's expert testimony and provide an affidavit regarding where the State's expert, A.P. Merillat, "got things wrong." 2018 WL 341755, *9. In denying the motion, the district court explained that because a state court considered the merits of Devoe's arguments, federal habeas review is limited to the state court's record and that any "additional factual development is irrelevant in the adjudication of exhausted claims." *Id.* The United States Court of Appeals for the Fifth Circuit agreed with the district court, holding that because the state court also reached the merits of the claim sought to be investigated, federal review was similarly limited and would exclude the sought expert testimony.

[A] federal court's "review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011); *see Blue v. Thaler,* 665 F.3d 647, 656 (5th Cir. 2011) (explaining that "*Pinholster* prohibits a federal court from using evidence that is introduced for the first time" in a federal court in the context of an *Atkins* claim). Thus, even if a federal court granted Devoe's motion for expert funding, a federal court could not consider any additional facts concerning [the State expert's] testimony discovered by such [a newly funded] expert. Any awarded funding would be a misallocation of federal resources.

*Devoe,* 2018 WL 341755, at *10.

## IV.

### A. Federal Funding to Assist in Presentation to State Court

Despite the admonitions of the United States Court of Appeals for the Fifth Circuit and this Court, and Battaglia's own representations to the state court, Battaglia made no attempt to obtain federal funding under § 3599 for any sought investigative assistance that was denied by the state court when it could have assisted the experts in making their evaluations and providing evidence to the state court. In granting a stay to allow newly appointed counsel to investigate and present a competency challenge to the state court, the Court of Appeals instructed counsel, "[i]t is the present counsel's responsibility now appointed to take the case he has—and that may be developed during the time gained—to state court. Fear of not prevailing is no excuse to ignore the state court's primary right of first decision." *Battaglia v. Stephens,* 824 F.3d 470, 476 (5th Cir. 2016). This instruction was based on the determination that Battaglia could return and present his challenge to the state court.

Though Battaglia's *Ford* claim appears to be unexhausted, he may return to state court and file an Article 46.05 petition. As Battaglia notes, there is no procedural barrier or time limit that would prevent him from taking this step. And the plain language of § 3599(e) expressly provides that Battaglia would be entitled to the assistance of federal counsel—supported by federal funding—during this proceeding.

9

*Id.* at 474-75. Based on that observation, this Court assured Battaglia that it "would grant funding that is shown to be reasonably necessary to 'file an Article 46.05 petition' in the state court," and provided guidance on what would be required to make that showing in this case. Order, doc. 3, 2-3.

Battaglia's own motion in the state court referenced these assurances of the availability of federal funding, and expressed his intent to return to federal court for funding if the state court "decides it cannot fully fund the necessary experts, ...." Mot. Inv., App.006. Despite the federal court assurances and his own representations before the state court, Battaglia did not return to this Court to seek funding for the sought investigative assistance that was denied by the state court on July 29, 2016, until 2018, long after the state court concluded its hearing and the Court of Criminal Appeals ultimately denied relief. Battaglia's current request to fund investigative assistance comes too late to have any impact on the expert evaluations that were made and the testimony that was presented to the state court on November 14-15, 2016. Therefore, it is not being sought "to 'file an Article 46.05 petition' in the state court." Order, 3 (quoting *Battaglia,* 824 F.3d at 474).

**B. Funding Additional Evidence for Federal Habeas Review**

Instead, the requested funding appears to be sought for the purpose of contesting the state court's adjudication of his claim. Therefore, this Court must determine whether the sought funding is shown to be "reasonably necessary" under § 3599 for such purpose. Battaglia seeks investigative assistance under 18 U.S.C. § 3599, and a stay of his execution, in connection with the preparation of a habeas petition to challenge the state court determination that he was shown to be incompetent to be executed. He requests funding "for the mitigation investigation that should have been allowed by the state court." Mot. Inv., 7.

Battaglia made his request in the state court for a mitigation specialist "to perform a number

of services in support and anticipation of" the evaluations by Battaglia's requested expert. Mot. Inv., App.010. Specifically, in state court, Battaglia requested the mitigation specialist

> to obtain and review voluminous records from TCDJ and Mr. Battaglia's medical records. These records have not been collected or reviewed by any previous counsel. Counsel will also task [the mitigation specialist] with collecting information about Mr. Battaglia's background (including environmental and genetic risk factors) and present understanding of his death sentence by interviewing collateral sources, including Mr. Battaglia's family members and others with whom Mr. Battaglia communicates.

Mot. Inv., App.010-011. Battaglia argued that the requested investigation was necessary because a comprehensive mitigation investigation was not reflected in the files of prior counsel, who conducted a mental health investigation but did not develop "a mitigation or mental health profile that addresses Mr. Battaglia's current competency for execution." Mot. Inv., App.011. While conceding that prior counsel obtained expert mental health assistance, Battaglia argued that "this was a backwards-looking investigation, and it was not based on a comprehensive record collection or investigation of Mr. Battaglia's psychosocial history." Mot. Inv., App.011. The state court granted $12,000 of the funding Battaglia requested for his neuropsychological expert, but no funding for the mitigation specialist. *See* Mot. Inv., App.024.

Before the state court, Battaglia also indicated that sought investigative services could be performed by counsel, but at a higher hourly rate. *See* Mot. Inv., App.011. Counsel also stated that the proposed mitigation investigator "has the experience and training to conduct interviews involving sensitive mental health and background issues that counsel lacks." *See id.* Although Battaglia argues that any refusal to grant the requested funding would result in the lack of essential evidence and that "these meritorious factual issues will 'never be heard,'" Mot. Inv., 25, counsel has not revealed in these motions how much of the sought investigation–such as collecting and reviewing

voluminous records, compiling records for the expert, interviewing Battaglia, his family members or others, and organizing a genogram to show Battaglia's family history of mental illness–was actually performed by counsel and co-counsel appointed in this case. Nor does Battaglia indicate whether counsel has already requested or received compensation for such work in any CJA vouchers submitted for payment by this Court. Therefore, Battaglia has not shown what essential investigation was not conducted in time to make a difference to the state court determination, and what remains lacking.

To be reasonably necessary, and not a "misallocation of federal resources," the sought investigative services must be designed to produce something that could be considered by this Court in the adjudication of a habeas claim that may come before it. *See Devoe,* 2018 WL 341755, at *10. Because the sought investigative assistance comes too late to produce evidence that may be presented to the state court in making the adjudication in question, the limitations of § 2254(d) prevent this Court from considering any evidence obtained from the sought investigative assistance.

### *The Limitation of § 2254(d)*

In his supplemental briefing, Battaglia addresses the question of how this Court could consider any evidence that may be developed by the sought investigator in light of the limitations of 28 U.S.C. § 2254(d). He argues that the relitigation bar of § 2254(d) "is a form of issue preclusion, a doctrine that provides that once a court decides an issue of fact or law necessary to its judgment, the decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Supp. Br., doc. 12, 8 (citing *Montana v. United States,* 440 U.S. 147, 153 (1979) and *RecoverEdge L.P. v. Pentecost, et al.,* 44 F.3d 1284, 1291 (5th Cir. 1995)). He argues that this doctrine does not apply to preclude the federal court from relitigating state-court

adjudications "where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." Supp. Br., 8 (quoting *Allen v. McCurry*, 449 U.S. 90, 100 (1980)). He also argues that it would violate due process for this Court to apply the doctrine of issue preclusion to this claim because he did not have a meaningful opportunity to be heard due to the lack of the quality, extensiveness, or fairness of procedures in the prior proceeding. *See* Supp. Br., 9. Because he did not receive funding at the state-court level for the sought investigator, Battaglia argues that he was not given a "fair shot" at presenting his *Panetti/Ford* claim in the state court and, therefore, did not have a full and fair opportunity to litigate that claim. Supp. Br., 8. Accordingly, he argues that the relitigation bar should not apply. *See* Supp. Br., 7-11. Battaglia also makes a constitutional argument that without a "full and fair" hearing requirement, deference under § 2254(d) would violate due process. *See* Supp. Br., 9-10.

Respondent counters that Battaglia received all that he was entitled to under *Ford/Panetti*, and that § 2254(d) is not the same as "issue preclusion." Respondent points out that Battaglia made a competency challenge in state court with the assistance of an appointed expert, was granted a live evidentiary hearing during which three other experts and one lay witness testified, and the state court considered abundant evidence in adjudicating the competency challenge. *See* Resp., 37. Respondent also argues that the limitation of § 2254(d) "is not the same as 'issue preclusion,' in that the 'full and fair hearing' requirement was explicitly removed from the statute by the AEDPA." Resp., 37-38 (citing *Valdez v. Cockrell*, 274 F.3d 941, 949-50 (5th Cir. 2001)). Respondent continues that the term "adjudication on the merits," giving rise to AEDPA deference, "refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons. ***It does not speak to the quality of the process.***"

Resp., 38 (quoting *Valdez,* 274 F.3d 950) (emphasis added and citations omitted by Respondent).

Therefore, Respondent concludes that the AEDPA and Fifth Circuit precedent foreclose Battaglia's argument.

On this point, Respondent has the better argument. The doctrine of "issue preclusion" is a "precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata." *See Montana,* 440 U.S. at 153. Any argument that it was applied to habeas proceedings under *Townsend v. Sain,* 372 U.S. 293, 312 (1963), and incorporated into the prior version of 28 U.S.C. § 2254(d) would be superseded by the amendments under the AEDPA that "jettisoned all references to a 'full and fair hearing' from the presumption of correctness accorded state court findings." *Valdez,* 274 F.3d at 949.

Regarding Battaglia's constitutional argument that due process includes a "full and fair" hearing requirement, petitioner cites no authority holding that § 2254(d) is a form of issue preclusion that violates due process, and this Court is not aware of any. The Court declines to adopt such a novel theory that would appear to contradict *Valdez.* *See also Hummel v. Davis,* No. 4:16-CV-00133-O, 2018 WL 276331, at *15 (N.D. Tex. Jan. 3, 2018) (rejecting "novel argument" that 2254(d) is a form of issue preclusion that would violate federal due process).

Even so, due process requirements are central to federal court review of such competency determinations. *Ford* and *Panetti* impose procedural due process requirements upon states when an inmate makes a substantial threshold showing of incompetence to be executed which, if violated, could give rise to additional evidentiary development in federal court.

> Once a prisoner seeking a stay of execution has made "a substantial threshold showing of insanity," the protection afforded by procedural due process includes a "fair hearing" in accord with fundamental fairness. This protection means a prisoner

must be accorded an "opportunity to be heard," though "a constitutionally acceptable procedure may be far less formal than a trial." As an example of why the state procedures on review in *Ford* were deficient, Justice Powell explained, the determination of sanity "appear[ed] to have been made solely on the basis of the examinations performed by state-appointed psychiatrists." "Such a procedure invites arbitrariness and error by preventing the affected parties from offering contrary medical evidence or even from explaining the inadequacies of the State's examinations."

Justice Powell did not set forth "the precise limits that due process imposes in this area." He observed that a State "should have substantial leeway to determine what process best balances the various interests at stake" once it has met the "basic requirements" required by due process. These basic requirements include an opportunity to submit "evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination."

*Panetti v. Quarterman*, 551 U.S. 930, 949-50 (2007) (citations omitted) ((quoting *Ford*, 477 U.S., at 424, 426, 427) ( Powell, J., concurring)). Once an inmate proves that a state has failed to provide the procedures as required by *Ford* and *Panetti*, he has shown an unreasonable application of clearly established Supreme Court law under § 2254(d)(1), which would then allow a federal court to review the inmate's incompetency claim without deference to the state court's decision and receive additional evidence developed by further investigative or expert assistance. This preliminary showing, however, must be made on the record that was before that state court. *See Pinholster*, 563 U.S. at 185.

Battaglia insists, however, that he has not filed, and cannot file, a habeas petition to make this showing until the present motions are granted and the investigation is completed. *See* Mot. Inv., 24-26; Mot. Stay, doc. 10, 21-31. He argues that to require him to make a showing at this juncture that he may have a viable claim for relief would be to place the cart before the horse. *See* Mot. Inv., 24. Battaglia's reasoning, however, would nullify the requirements of § 2254(d).

In his supplemental briefing, Battaglia argues that he has already made the showing required by § 2254(d) in his motion for stay and motion for funding. *See* Supp. Br., 7, 10-11. But neither of those motions mentioned the requirements of § 2254(d). Battaglia's funding motion argues that the state court's determination of facts was deficient in relying primarily on the opinions of an expert that conducted an inadequate evaluation and the opinion of a lay witness that was not qualified. *See* Mot. Inv., 21-23, 27-30. This does not show any deprivation of the procedures required by *Ford* and *Panetti*, or that the state court's determination was based on an unreasonable determination of the facts in light of the record before the state court. Instead, it argues that the requested additional funding may find evidence to show an entitlement to relief because of Battaglia's disagreement with the testimony and opinions relied upon by the state court.

Battaglia's motion for stay also argues that the reasoning of *Harbison v. Bell,* 556 U.S. 180 (2009), and the funding statute, § 3599(e), apply to authorize federal court funding of investigative assistance in state court competency proceedings. *See* Mot. Stay, 21-22. But this Court has already determined that it would have granted whatever funding was shown to be reasonably necessary to assist in that competency proceeding. Order, 3 (citing *Battaglia,* 824 F.3d at 474). No such funding was requested in this Court at any time after the state court denied the requested investigative funding and before the current motions were filed, which is too late to assist in the state court determination.

Battaglia also argues that under the law-of-the-case doctrine, the issue of funding has already been determined in his favor. *See* Mot. Stay, 23-24. But as set forth in Section A above, the opinion of the Court of Appeals addressed the funding needed to assist in making the competency challenge **before the state court**. That opinion did not resolve, or even address, the question of whether

evidence developed in federal court to review the state court's competency decision could be considered under § 2254(d), or whether federal funding would be appropriate to develop new evidence that was not considered by the state court and could not be considered by this Court. Therefore, the law of the case does not foreclose the issue.

Battaglia also argues in his supplemental briefing that this Court may consider evidence that may be developed by the sought investigator despite the limitations of 28 U.S.C. § 2254(d) because *Pinholster* does not limit all federal habeas corpus review to the state court record. *See* Supp. Br., 11-16. Comparing his motion to a motion for investigative assistance to explore a claim of ineffective assistance of trial counsel for failing to investigate mitigating evidence, Battaglia asserts that the state court's denial of his motion for funding prevented the sought investigative assistance, and that additional investigation could produce evidence that could materially alter the claim and render it unexhausted. Therefore, Battaglia argues that any potential habeas petition may not ultimately present an exhausted claim subject to the limitation of § 2254(d), and this Court could not make that determination until after the investigation is complete and the ultimate claim is presented for consideration in a habeas petition. *See* Supp. Br., 11-13.

A reasonable necessity is not shown, however, when the claim sought to be investigated is not cognizable or is procedurally barred from federal habeas review. *See Ward,* 777 F.3d at 266. In *Ward,* the Court of Appeals favorably quoted the district court's language that disallowed "factual development in federal court in search for unexhausted claims," noting that such a procedure would "encourage sandbagging in state court to obtain *de novo* review of a petitioner's 'real' claim in federal court." *Ward,* 777 F.3d at 257 n.3. The same reasoning would apply in this case. Funding should not generally be granted for inmates to transform exhausted claims that may be reviewed by the

federal court into unexhausted claims that are procedurally barred from federal habeas review.

More importantly, Fifth Circuit precedent prevents this Court from granting funding and a stay to develop a new claim of incompetence to be executed that would differ from the claim that was presented to the state court making the competency determination to be reviewed. In *Green v. Thaler,* 699 F.3d 404 (5th Cir. 2012), the Court of Appeals instructed that a district court should not entertain a request for expert resources for such a new claim.

> We think there is an important distinction between the claim of incompetency that was presented to the state trial court in 2010 and a claim that the petitioner's mental condition today, on the eve of his execution, has deteriorated substantially, such that he is currently incompetent to be executed. The latter claim does not undermine the state courts' conclusion that he was competent to be executed in 2010, as would potentially be the case with what we consider to be an "unexhausted claim." It is simply a new claim. It is one that has not been presented to the state court system, even though state law provides a mechanism for presenting such a claim. Tex. Code Crim. Proc. art. 46.05. We are unwilling to treat this new claim as an unexhausted claim within the meaning of [*Rhines v. Weber,* 544 U.S. 269 (2005)], which would permit the district court to stay his execution pending the state court disposition of this new claim. ***We are even more unwilling to allow the district court to entertain his request for "expert resources."*** Instead, we are convinced that Green's federal court proceedings should come to an end with the disposition of the federal habeas claim relating to the 2010 competency hearing, and any request for a stay of execution on competency grounds should be directed by Green to the state courts, perhaps ancillary to the proceedings contemplated by Article 46.05(e).

*Id.* at 420 (emphasis added). This binding precedent prevents this Court from granting funding and a stay to develop a new unexhausted claim of incompetence to be executed.

Battaglia also argues that § 3599 should not be interpreted to prohibit funding to further investigate claims adjudicated on the merits under § 2254(d) because that would make § 3599 a "legal fiction" that does not give meaning to the funding statute as a practical matter. Supp. Br., 13-14. This argument fails to recognize that funding was available from this Court at a time when it could have assisted in Battaglia's presentation to the state court and become part of the record that

could be considered under § 2254(d).  Further, if Battaglia files a habeas petition that shows *from the state court record* that he was denied the due process requirements of *Ford* and *Panetti*, or otherwise shows that the state court adjudication was based on an unreasonable determination of fact in light of *the evidence presented in the state court proceeding*, then additional funding and evidentiary development may be available.  New funding and evidentiary development, however, could have no bearing on that preliminary determination under § 2254(d).

In sum, this Court cannot see how any evidence that may be obtained by the sought investigator could be considered in determining under § 2254(d)(1) whether the state court's record reflects compliance with the procedures required by *Ford* and *Panetti* in adjudicating Battaglia's competency challenge or under § 2254(d)(2) whether the state court's denial of that challenge was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, any grant of funding for such an investigator would appear to be a misallocation of federal funds.

## V.

Battaglia also requests a stay of execution to (1) allow a meaningful investigation by the requested mitigation investigator and (2) to allow the Supreme Court time to consider the pending petition that Battaglia has filed there.  *See* Mot. Stay, 7.  Jurisdiction to grant the requested stay is asserted under *McFarland v. Scott,* 512 U.S. 849, 858 (1994), and the Court of Appeals opinion in *Battaglia,* 824 F.3d at 475.  *See* Mot. Stay, 23-27.

This Court agrees that it has jurisdiction to stay Battaglia's execution to allow him to conduct the investigation needed to prepare and file a habeas petition in this Court.  "Once a capital defendant invokes his § 3599 right, a federal court also has jurisdiction under 28 U.S.C. § 2251 to

enter a stay of execution to make the defendant's § 3599 right effective." *Battaglia,* 824 F.3d at 475 (internal quotations and citations omitted). Since the requested funding is denied, however, there is no investigation that requires a stay. Therefore, Battaglia's request for a stay that is dependant on the grant of that request for funding is also denied.

Regarding this Court's jurisdiction to grant a stay to allow the Supreme Court to consider a petition that is before it, Battaglia has not established this Court's jurisdiction to grant such a stay. "When a petitioner seeks a stay of execution pending the disposition of a writ of certiorari in the United States Supreme Court, he should seek that stay in the Supreme Court itself." *Williams v. Cain,* 143 F.3d 949, 950 (5th Cir. 1998) (finding that "[t]he district court lacks the ability to give [the stay of execution] under 28 U.S.C. § 2251"); *Howard v. Dretke,* 157 F. App'x 667, 673 (5th Cir. 2005). Since the prior opinion of the Court of Appeals did not address this basis for jurisdiction, the law of the case does not support jurisdiction in this Court for such relief. Therefore, this basis for jurisdiction fails.

\* \* \*

Battaglia has not shown that the sought investigative assistance is reasonably necessary under 18 U.S.C. § 3599(f), much less that the requested funding in excess of $7,500 is "necessary to provide fair compensation for services of an unusual character or duration" under § 3599(g)(2). Accordingly, the investigative funding as requested must be denied. Since Battaglia's motion for a stay of execution relies upon the granting of the motion for funding, it must also be denied. Battaglia has shown no other basis for jurisdiction to grant a stay of his execution.

Petitioner John David Battaglia's motion to fund investigator, doc. 9, and for a stay of execution, doc. 10, are **DENIED**.

**IT IS SO ORDERED** this 24th day of January, 2018.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE